Filed 8/25/22  In re Rafael M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re RAFAEL M., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E078907 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ2100063) |
| v. | OPINION |
| M.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Christine V. Pate, Judge. (Retired Judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Conditionally reversed with directions.

Annie Greenleaf, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Teresa K.B. Beecham and Julie K. Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

M.G. (mother) appeals the findings and orders made at the permanency planning hearing for her son, Rafael M., including the order terminating her parental rights. (Welf. & Inst. Code, § 366.26.)[1] She argues the findings and orders must be conditionally reversed because the Riverside County Department of Public Social Services (the department) failed to fulfill their duty of initial inquiry under state law implementing the Indian Child Welfare Act (ICWA). (25 U.S.C. § 1901 et seq; Welf. & Inst. Code, § 224.2, subd. (b).) We agree and therefore conditionally reverse and remand for a new ICWA finding.

# I

# FACTS

In February 2021, after Rafael tested positive for amphetamines at birth, the department filed a petition under section 300, subdivisions (b)(1), alleging he was at substantial risk of serious physical harm or illness due to neglect. The petition alleged mother and father (who is not a party to this appeal) had criminal histories and unresolved substance abuse issues and lacked appropriate provisions and housing to care for the child. The department took Rafael into emergency protective custody and placed him with his maternal aunt.

---

[1] Unlabeled statutory citations refer to the Welfare and Institutions Code.

In interviews leading up to the filing of the petition, both mother and father told the social worker they didn't know of any Indian ancestry in their families. After those initial interviews, however, the department was unable to contact or locate either parent despite various attempts, and neither parent appeared at the jurisdiction and disposition hearing on March 1, 2021. The court relieved their counsel from further representation, found ICWA did not apply and found the petition's allegations true, removed Rafael from their care, bypassed reunification services on the ground their whereabouts were unknown (§ 361.5, subd. (b)(1)), and set the permanency planning hearing for a date in June 2021.

Leading up to the permanency planning hearing, the department recommended adoption as Rafael's permanent plan, but not with his current caretaker, the maternal aunt, due to inconsistencies in her interviews and four outstanding welfare referrals regarding her home. They requested the hearing be continued to allow them to look for a suitable prospective adoptive home. The court granted the continuance and ordered the department to evaluate the maternal great-aunt who was then caring for mother's two older children.

The social worker was able to make contact with father in July 2021. During their phone conversation, father said he may have one relative to consider for placement and that he would have them contact the social worker if they were interested. At a placement hearing the following month, the court ordered that Rafael be placed with the maternal

great-aunt on a temporary basis because she was not interested in adoption, only legal guardianship.

In October 2021, the department learned mother was in custody in Orange County. The court appointed counsel for her and continued the permanency planning hearing to a date in February 2022.

On December 2, 2021, Rafael was placed with a maternal cousin in Texas. The cousin and her husband had recently moved to Austin and wanted to adopt Rafael. At a review hearing on December 29, the department and mother filed a stipulation agreeing to adoption as Rafael's permanent plan. Among other stipulations in the document was an agreement that ICWA did not apply.

Leading up to the scheduled permanency planning hearing, the department informed the court they had also located father; he too was in custody in Orange County. On the scheduled date of the permanency planning hearing, the court appointed counsel for him and issued a continuance to allow him to prepare.

The permanency planning hearing took place the following month, on March 29, 2022. Mother and father both appeared. Father's counsel asked the court to inquire as to possible Indian ancestry as this was his client's first appearance in the matter, and in response to the court's question, father denied having Indian ancestry. Both parents objected to termination of their parental rights and asked the court to consider guardianship as a less permanent plan. The court found ICWA did not apply, terminated

4

mother's and father's parental rights, and selected the maternal cousin and her husband as the prospective adoptive parents.

## II

## ANALYSIS

Mother argues we must reverse the orders terminating her and father's parental rights as well as the finding that ICWA does not apply because the department failed to discharge their duty of initial inquiry under ICWA-related state law. Specifically, she argues they failed to ask her extended family members about potential Indian ancestry, as required by section 224.2, subd. (b). We agree.

ICWA establishes minimum federal standards a state court must follow before removing Indian children from their families. (*In re T.G.* (2020) 58 Cal.App.5th 275, 287.) California law implementing ICWA also imposes requirements to protect the rights of Indian children, their families, and their tribes. (See §§ 224-224.6.) An Indian child is any unmarried person under 18 who is either "a member of an Indian tribe or eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (b).)

At the heart of ICWA is the requirement to provide notice of the dependency proceedings to the relevant Indian tribe or tribes when there is "reason to know" the child is an Indian child. (25 U.S.C. § 1912(a); § 224.3, subd. (a).) The purpose of this requirement is to enable the tribes "to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise

5

jurisdiction over, the matter." (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 288.) Because ICWA defines "Indian child" in terms of tribal membership, not race or ancestry, "the question of membership is determined by the tribes." (*Id*. at pp. 275, 294; see also *Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 65-66, fn. 21, [the Indian tribe is final arbiter of its membership rights].) Notice to the tribes is therefore "central to effectuating ICWA's purpose" because it enables the tribe "to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter." (*In re T.G.*, at pp. 275, 288.)

However, "[b]ecause it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741 (*Benjamin M*).) These inquiries, collectively referred to as the duty of inquiry, are a precursor to the notice requirement—they are designed to enable the department and the juvenile court to determine whether notice to the tribes is necessary. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 884-883.)

The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry. (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 290.) Our case involves the duty of initial inquiry only. Federal regulations require state courts to ask each participant "at the commencement" of a child custody proceeding "whether the participant knows or has reason to know that the child is an Indian child." (25 C.F.R. § 23.107(a).) California law requires the court to make the same inquiry of each participant at their "first [court] appearance." (§ 224.2, subd. (c).) California law also requires the department, when

6

taking a child into temporary custody, to ask "the child, parents, legal guardian, Indian custodian, *extended family members*, others who have an interest in the child," and the reporting party whether the child is or may be an Indian child. (§ 224.2, subd. (b), italics added.) Extended family members include adults who are the child's stepparents, grandparents, siblings, siblings-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

To ensure that tribes receive notice when required, the duty of initial inquiry applies to both the department and the juvenile court on an "affirmative and continuing" basis. (§ 224.2, subd. (a).) It "begins with initial contact" and applies through termination of parental rights "and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child." (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 290.)

As we recently held in *Benjamin M.*, a failure to discharge the duty of initial inquiry is prejudicial, and we will therefore conditionally reverse, if "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) Notably, this standard does not require "proof of an actual outcome (that the parent may actually have Indian heritage)"; rather, the missing information need only be relevant to the ICWA inquiry, "whatever the outcome will be." (*Id.* at pp. 743-744.)

7

In this case, the department failed to discharge the duty of initial inquiry because they asked only the parents about Indian ancestry, despite being in contact with at least three extended family members and interested relatives on mother's side—the maternal aunt, great-aunt, and cousin. Additionally, the record contains no indication they asked father for contact information for any of his extended family members or attempted in some other way (e.g., by reviewing the dependency file from the Orange County proceeding) to obtain the contact information.

As a result of this failure, the juvenile court's finding that ICWA did not apply is not supported by the record. (*In re J.C.* (2022) 77 Cal.App.5th 70, 79-80.) "[T]he court had a duty either to require [the department] to provide a report with complete and accurate information regarding the results of [their] inquiry . . . or to have the individual responsible for notice to testify in court regarding the inquiry made . . . . Only then could the court determine whether [ICWA] applied." (*In re L.S.* (2014) 230 Cal.App.4th 1183, 1198.)

We conclude the error is prejudicial. Mother's extended family members and interested relatives were readily available—they each acted as Rafael's caretaker at various points in the case—and their responses would "shed meaningful light on whether there is reason to believe" he is an Indian child. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) Though it appears they had no contact information for father's extended family members, it also appears the department made no attempts to obtain such information. As

8

a result, we have no idea how difficult it would be to get it. On remand, they should make an attempt to do so.

The department raise a number of arguments why remand is unnecessary, all of which we reject. First, they claim mother waived her challenge to the March 29, 2022 ICWA finding when she filed the December 29, 2021 stipulation to adoption that also contained a stipulation that ICWA did not apply. But there is simply no support for this position. As our Supreme Court has explained, ICWA and the California laws implementing it protect interests of the Indian tribes "that are separate and distinct" from those of the parents, and as a result, a parent cannot waive a right that inures to the tribes' benefit. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 13 (*Isaiah W.*); see also *In re K.R.* (2018) 20 Cal.App.5th 701, 706 ["the parent's failure to object in the juvenile court to deficiencies in the investigation or noticing does not preclude the parent from raising the issue for the first time on appeal . . ."].) No case has held that a parent can waive the tribes' right to notice. (See *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745 [because the tribe is not present, "the agency is charged with obtaining information to make" the tribe's right to a determination of a child's Indian ancestry "meaningful"]; see also *In re M.M.* (July 12, 2022, B315997) ___Cal.App.5th ___, [2022 WL 2679301] dis. opn. of Wiley, J. ["The right here belongs to the tribes . . . [who] have no idea their rights are on the line in these cases"].)

In any event, even if mother's stipulation *could* constitute a waiver, it would not apply to the ICWA finding issued several months after the stipulation, at the permanency planning hearing. This is because the department and the court are under a *continuing* duty to inquire about the family's Indian ancestry "throughout the dependency proceedings," and as such, the court was required to make a "*current* finding . . . that it had no reason to know [Rafael] was an Indian child and thus ICWA notice was not required" before terminating parental rights. (*Isaiah W.*, *supra*, 1 Cal.5th at p. 10.)

Next, they argue we should decline to follow *Benjamin M.*—our division's most recent precedent on the prejudice standard—and instead use the standard we applied in *In re A.C.* (2021) 65 Cal.App.5th 1060, which requires a parent to "make an *affirmative representation* of Indian heritage on appeal." (*Id.* at p. 1069, italics added.) But, as we explained in *Benjamin M.*, we think that standard inappropriately shifts the burden of inquiry to the parents, to the detriment of potentially interested tribes. (See *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745.) They attempt to distinguish our case from *Benjamin M.* on the ground that only one parent denied Indian ancestry there, whereas both did here. But as section 224.2, subdivision (b) makes clear, the parents are not the end of the inquiry. "By requiring the Department to inquire of a child's extended family members as to the child's possible Indian ancestry, the Legislature determined that inquiry of the parents alone is not sufficient." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 431.) "[T]he point of the statutory requirement that the social worker ask all relevant individuals whether a child is or may be an Indian child" is "to obtain information *the*

10

*parent may not have*." (*In re Y.W.* (2021) 70 Cal.App.5th 542, 556, italics added; see also *In re J.C.*, *supra*, 77 Cal.App.5th at pp. 70, 78-80 [same]; *In re Darian R.* (2022) 75 Cal.App.5th 502, 509 [same]; *In re H.V.* (2022) 75 Cal.App.5th 433, 438 [same].) We are unmoved by the request to return to a prejudice standard we have expressly disapproved.

Finally, the department argue mother's ICWA challenge has been mooted by their postappeal investigation and have filed a motion to dismiss the appeal on the basis of a declaration from the social worker describing the inquiries he made after mother filed her opening brief. They argue we may consider this evidence under Code of Civil Procedure section 909, which "permits an appellate court to take additional evidence and make independent factual findings on appeal," in appropriate cases, "to determine whether an issue on appeal is moot."[2] (*In re M.B.*, (2022) 80 Cal.App.5th 617, 627, citing *In re Josiah Z.* (2005) 36 Cal.4th 664, 676.) In her opposition to the motion to dismiss, mother argues the juvenile court should consider the evidence in the first instance, not the reviewing court. She also argues she should be afforded the opportunity to question the accuracy of the statements in the declaration by cross-examining the social worker and presenting witnesses of her own.

---

[2] The statute says: "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make factual determinations contrary to or in addition to those made by the trial court. . . . The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require." (Code Civ. Proc., § 909.)

There appears to be a split of authority on how to handle postjudgment evidence of an agency's investigatory efforts under ICWA. In support of their approach, the department cite *In re Allison B.* (2022) 79 Cal.App.5th 214, in which the appellate court considered postjudgment evidence of the agency's post-appeal investigation under Code of Civil Procedure section 909 when reviewing the juvenile court's ICWA finding. The sounder approach, in our view, is the one taken by our division as well as the majority of courts to consider the issue, and it requires the juvenile court to consider the evidence *and allow the parent an opportunity to challenge it*. (*In re Ricky R.* (Aug. 25, 2022, E078646); see also, e.g., *In re E.V.* (2022) 80 Cal.App.5th 691; *In re Jennifer A.* (2002) 103 Cal.App.4th 692; *In re M.B.*, *supra*, 80 Cal.App.5th 617; *In re K.M.* (2015) 242 Cal.App.4th 450, 458.) Where, as here, both the agency and the juvenile court failed to follow state law implementing ICWA, "[m]aking the appellate court the trier of fact is not the solution." (*In re Jennifer A.*, at p. 703.) Instead, the juvenile court should consider in the first instance whether the department remedied their failure and fulfilled the duty of initial inquiry. (*In re E.V.*, *supra*, 80 Cal.App.5th 691.)

As a final point in response to the department's position on appeal, we echo the words of our colleagues in Division Three. Where, as here, the ICWA error is clear, "[t]he most expeditious and efficient way to solve th[e] problem is for the parties to stipulate to a limited reversal and an expedited remittitur." (*In re K.M.*, *supra*, 242 Cal.App.4th at p. 458.)

12

## III

## DISPOSITION

We deny the motion to dismiss the appeal, and we conditionally reverse the March 29, 2022 ICWA finding and orders terminating parental rights. On remand, the juvenile court shall order the department to comply with the duty of initial inquiry (§ 224.2, subd. (b)) and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the pertinent tribes (25 U.S.C. § 1912(a); § 224.3). If the court determines ICWA does not apply, the order terminating parental rights shall be reinstated. If the court determines ICWA does apply, the court shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH _____
J.

We concur:

RAMIREZ _____
P. J.

McKINSTER _____
J.

13